# State, *ex rel.* Attorney General *v.* Hasty.

## *Impeachment.*

(Decided November 4, 1913. 63 South. 559.)

1. *Officers; Impeachment; Proceedings.*—The proceeding for the impeachment of an officer is highly penal in its nature, and is governed by the rules of law applicable to criminal procedure, although the impeachment would not prevent an indictment and conviction, and does not extend beyond removal from office and disqualification to hold office during the term.

2. *Same; Grounds; Acts During Previous Term.*—Under sections 173-4, 176, Constitution 1901, an officer who is impeached and removed may be elected to the same office for a subsequent term, and cannot be removed from such subsequent term because of the conduct during the previous term, nor can an officer, re-elected without having been impeached and removed, be removed from the subsequent term for acts done during his previous term.

3. *Same; Evidence.*—The acts of an officer during a previous term of office, though not grounds of impeachment, may be considered as evidence so far as they are connected with or bear upon his general course of conduct during the present term, as shedding light upon his motive or intent in committing the acts and omissions charged during the present term.

4. *Same; Information.*—While it may not be necessary for the Attorney General to set up his authority in the information for filing same, the information is not rendered defective because he does so.

5. *Same.*—While under sections 7125 and 7103, Code 1907, the information need not be confined to the specifications in the order or report authorizing the Attorney General to act, the information should be complete in itself without reference to orders or reports as exhibits thereto.

6. *Executions.*—Under section 3270, subdivision 11, sections 4079, 6696 and 6698, Code 1907, it is held to be the duty of the circuit clerk to issue executions in the county court only when he is clerk of said court; but where the probate judge is made clerk of said court, it becomes his duty to issue such executions.

7. *Clerks; Circuit Court; County Court.*—The clerk of the circuit court of Marengo county is not made the clerk of the county court of said county by local law or otherwise.

8. *Courts; County; Records; Entries.*—While probate judges need not be learned in the law yet the records and judgments of the county court are so simple in form that they should be able to make clear and accurate entries as to the disposition of cases, the fines imposed and the cost tax in each case, and the entries of collections, etc.

9. *Judgments; County Courts; Form.*—Judgments of the county court are sufficient in form if they comply substantially with the provisions of section 6720, Code 1907.

10. *Judges; Probate Judges; Impeachment; Grounds.*—Where a probate judge, who was judge as well as clerk of the county court, so kept the records of the county court that they contained inaccuracies affording him an opportunity to appropriate fines and costs without detection, and who collected funds to which the county was entitled and withheld them until he was checked up by an examiner, and their existence established by parol evidence, but it did not appear that any of these acts were committed with intent to defraud the county or anyone else, such conduct did not constitute corruption in office or willful neglect of duty within sections 173-4, Constitution 1901.

11. *Same.*—Where there was no physical or mental disability on the part of the judge of probate rendering him incompetent, though as ex officio judge of the county court the performance of his duties were lax, inaccurate, indifferent, and in some instances contrary to law, he was not subject to removal under the provisions of section 173-4, Constitution 1901.

12. *Same; Impeachment; Information.*—Under section 173, Constitution 1901, and section 7103, Code 1907, if it was desired or intended in an impeachment proceeding against the probate judge to rely upon a conversion of county funds by him, the information should have charged a violation of section 6838, Code 1907, as amended by Acts, Special Session 1907, p. 162.

ORIGINAL proceedings in the Supreme Court.

Original impeachment proceeding by the State, on relation of the Attorney General, against A. L. Hasty, as Judge of Probate and ex officio Judge of the County Court of Marengo County. Judgment exonerating respondent.

The specifications were: (1) Willful neglect of duty. (2) Incompetency. (3) Corruption in office, and covered a period extending back of and beyond the present term of office of the incumbent. Respondent moved the court to quash the proceedings, and to dismiss same in so far as they related to any of his acts and doings as such officer prior to the beginning of his present term, and desired the court to ascertain if evidence as to such prior acts would be received on the trial. They also by demurrer raised the question as to the duty of the respondent as judge of the county court to issue execution

in cases disposed of on the county court docket. There was voluminous testimony given ore tenus before the court, the substance of which is set out in the opinion.

R. C. BRICKELL, Attorney General, W. L. MARTIN, Assistant Attorney General, and RUSHTON, WILLIAMS & CRENSHAW, for appellant. Acts committed by a respondent during a prior term of office are admissible to show that the acts charged during his present term were done for sinister or illegal purposes.—*Commonwealth v. Rhodes,* 45 Ky. 171; *Reeves v. State,* 95 Ala. 31; *Langs Case,* 97 Ala. 41; *Snodgrass' Case,* 25 Ala. 161; *Jackson v. State,* 2 Ala. App. 226; 132 Mass. 223; 118 Mass. 604; 95 Ind. 468; 100 Am. Dec. 110; 62 L. R. A. 193. On the charge of incompetency counsel cite *State v. Lowe* in MSS.

R. B. EVINS, WILLIAM CUNNINGHAME, I. I. CANTERBERRY, GEORGE PEGRAM, and ELMORE & HERBERT, for appellee. If the acts charged as done in the present term are not sufficient to warrant impeachment, then the acts done in his past term are not admissible, as you cannot do by indirection what cannot be directly done.—*Reeves v. State,* 95 Ala. 31; *Ingraham v. State,* 39 Ala. 247. Evidences of an independent crime will not be admitted for the mere purpose of showing a disposition to commit crime.—24 Am. Rep. 69; 80 N. Y. 364.

PER CURIAM.—While ours is a popular form of government, under which nearly all officials are elected by the people, yet public office has been ever regarded as a public trust, and our lawmakers, while not contemplating or requiring infallibility, have expected a faithful and intelligent discharge of duty by those who

are selected to fill positions of trust and responsibility. This expectation has been emphasized, not only by statutes covering nearly all derelictions and providing a punishment for same, but by our organic law, which provides for the impeachment and removal from office of nearly all public officials for any of the causes therein enumerated, but which said impeachment does not exclude the right of the state to indict and is in its nature cumulative and is intended to relieve the public of an unfit official until the people have another chance to pass upon his qualification. While this extraordinary remedy by impeachment does not prevent an indictment and conviction thereunder, and does not extend beyond a removal from office and a disqualification to hold office under the state, during the term for which the officer was elected or appointed, it is, in its nature, highly penal and is governed by rules of law applicable to criminal prosecutions.

Section 173 of the Constitution provides for the method of impeaching certain officials therein enumerated and prescribes the causes for removal, and which are as follows: "Willful neglect of duty, corruption in office, incompetency, or interperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office and importance of its duties, as unfits the officer for the discharge of such duties, or for any offense involving moral turpitude while in office or committed under color thereof." Section 174 makes section 173 apply to probate judges and other officers therein named but who are omitted from said section 173, and section 176 provides that the penalty shall not extend beyond the removal from office and disqualification from holding office, under the authority of this state, for the term for which the officer was

elected or appointed; but the accused shall be liable to indictment and punishment as prescribed by law.

It must be observed that, while the law affords ample means for the indictment and punishment of unfaithful officers and for the removal of same for certain causes, the maximum penalty, under an impeachment proceeding, is the removal and disqualification to hold office under the state for the term only for which he was elected. If an officer is impeached and removed, there is nothing to prevent his being elected to the identical office from which he was removed for a subsequent term, and, this being true, a re-election to the office would operate as a condonation under the Constitution of the officer's conduct during the previous term, to the extent of cutting off the right to remove him from the subsequent term for said conduct during the previous term. It seems to be the policy of our Constitution to make each term independent of the other and to disassociate the conduct under one term from the qualification or right to fill another term, at least so far as the same may apply to impeachment proceedings, and as distinguished from the right to indict and convict an offending official. In other words, if this respondent had been inpeached and removed from his first term, that fact could not affect his right to hold the subsequent term to which he was elected in 1910, and, as he was re-elected in 1910, this fact alone forecloses the state from impeaching and removing him from the second term for acts done during the previous term. We therefore sustain the motion of respondent to strike from the information all grounds of impeachment based upon his conduct during the previous term of office.

We are not unmindful of the fact that there have been rulings by other tribunals, federal and state, wherein the conduct of the officer during the previous term of

office, and in a few instances before taking office, has been the basis of impeachment and removal; but the Constitutions there, as to the extent of the punishment and the period of removal, are not like ours, and these holdings can probably be differentiated from ours, and we need not therefore commit ourselves to the soundness or unsoundness of these adjudications.

· While we have eliminated the acts of the previous term, as grounds of impeachment, we have considered some of them as evidential facts, in so far as they are connected with or bear upon the respondent's general course of conduct during the second term, for the limited purpose of inquiring into the motive and intent of the respondent as to the acts and omissions charged to him during the second term.—*Reeves v. State*, 95 Ala. 31, 11 South. 158; Jones on Evidence, §§ 143-145.

The respondent questions, by demurrer, the charge that he neglected to issue executions from the county court upon the ground that, under the statute, it was not his duty to do so, and we are cited to subdivision 11 of section 3272 of the Code of 1907, which, among other things, requires the clerks of the circuit court to issue executions from the county court. There can be no doubt of the proposition that it is the duty of the circuit clerks to issue executions from the county court in the counties in which he is clerk of the county court, as well as clerk of the circuit court, and which is now and has been the case in many counties in the state. Section 4079 of the Code of 1907, however, makes it the duty of the clerk to issue executions, not circuit clerk alone, but all clerks, to issue executions from the courts of which they may be clerk, whether circuit, city, or county court clerks. These two sections have been in the Code for many years, and there is a field of operation for both of them, as said subdivision 11 of section

[State, ex rel. Attorney General v. Hasty.]

3272 makes it the duty of the circuit clerk to issue executions from the county court only when he is clerk of said court, and section 4079 is a mandate to all clerks as to executions from courts of which they are the clerk. Statutes should be construed practically and so as to make them sensible and reasonable when susceptible of such a construction, and it would be a legislative absurdity to provide a clerk for the county court other than the circuit clerk, and yet require the circuit clerk, instead of the county court clerk, to issue the executions from said county court. The clerk of the circuit court of Marengo county is not the clerk of the county court, under any local law or otherwise; but section 6696 of the Code makes the probate judge the judge of the county court, and section 6698 makes said judge the clerk of the county court, or permits him to employ a clerk. We therefore hold that it was the duty of this respondent, and not the clerk of the circuit court, to issue executions from the county court.

Section 7102 of the Code authorizes the institution of impeachment proceedings in instances there mentioned by five resident taxpayers upon the conditions there provided. And section 7125 provides for the institution of same by the Attorney General as to all officers included in section 174 of the Constitution, "when the Supreme Court shall so order, or when the Governor shall, in writing, direct the same, or when it appears from the report of any grand jury that any such officers ought to be removed from office for any cause mentioned in the first section of this chapter." It would seem that an order of the Supreme Court, a written direction by the Governor, or a report by a grand jury is necessary to give the Attorney General the authority to act, and if he does so without said authority the proceeding could probably be abated upon a proper plea.

It may not be necessary for the Attorney General to set up his authority in the information; but, if he sees fit to do so, this would not render the information defective. Section 7103 of the Code prescribes the nature and contents of the information and it should be complete in and of itself without reference to orders or reports as exhibits thereto. Nor do we think that the information need be confined to the specifications in the order, or that it is necessary for the order to the Attorney General to specify or set out all the acts or misconduct relied upon. These orders, or the report of the grand jury, are mere jurisdictional facts authorizing the Attorney General to act and the Attorney General shall prepare the information under section 7103, and which should be complete and specific in and of itself as a statement of the causes of impeachment.

The charges against this respondent are corruption in office, willful neglect of duty, and incompetency, but all of which are predicated upon his conduct in connection with the county court, and do not pertain to any of his acts as probate judge, or enjoined upon him as such, except as judge and clerk of the said county court.

The evidence shows certain inaccuracies, changes, and omissions upon the trial docket of the county court, or upon what was intended as the judgment entries, as would afford an opportunity for appropriating certain fines and costs without the slightest detection from an examination of the record and which could only be discovered by a resort to extraneous evidence. In other words, the proof shows that the respondent collected funds to which the county was entitled and withheld same until he was checked up by the state examiner of accounts, and which were not disclosed by the county court record, and the existence of which had to be established by parol evidence; but we are unable to say,

beyond a reasonable doubt, that the entries in question were made or omitted, or that the funds collected and withheld were so collected and withheld with the intent to defraud the county or any one else, and unless such was the case, his conduct in this particular did not amount to such corruption in office as is provided for by the Constitution.—*State v. Lovejoy,* 135 Ala. 64, 33 South. 156.

The Constitution does not require the probate judges to be learned in the law, nor is perfection expected in all instances, whether the judge be a layman or one learned in the law; but records and judgments of the county court are so simple in form that the law contemplates that even a layman can make clear and accurate entries as to the disposition of the cases and can, at least, keep a correct record or memorial of the fines imposed and the costs taxed in any case, and that in this respect said record should not be doubtful, incomplete, or inaccurate. The law does not contemplate that judgments in county courts should be as formal and complete as those in which appeals therefrom are not de novo. Section 6720 of the Code prescribes a very simple form of judgment, and a substantial compliance with said form is sufficient.—*State v. Jeter,* 162 Ala. 3, 50 South. 330. As the form is so brief and simple, we do not see how a failure to substantially comply with same could be an intelligent entry. The docket kept by this respondent, and upon which the judgment entries were made, was sufficient as such a book, and most of the entries may have complied, as to form, with the statute; but the trouble is that some of them omitted the amount of fine, and some contained unintelligent, double, and inconsistent entries, susceptible, perhaps, to explanation by parol evidence; but court records, even of the county courts, should speak the truth,

the whole truth, and nothing but the truth, in and of themselves, and without the aid of parol evidence to explain the same or to supply material omissions therefrom.

The state's counsel argued that this respondent should be impeached for a violation of section 6838 of the Code as amended by the act of 1907, Special Session, p. 162, which prohibits the conversion of county funds by officers. As heretofore held, the state has not proven its charge of corruption beyond a reasonable doubt, and, if it must rely upon the commission of an offense as covered by the fourth ground in section 173 of the Constitution, to wit, the commission of an offense involving moral turpitude while in office or committed under color thereof, the said offense should be specifically charged, as is required by section 7103 of the Code of 1907. We find no charge in the information specifically covering a violation of the foregoing statute or charging a conversion thereunder by depositing county funds in bank without requiring a bond as security for same and as is provided in the act.

The charges as to willful neglect of duty are predicated mainly upon a failure to keep a proper docket, or record, of the cases and disposition of same, in the county court, the failure to promptly pay over fines and cost, and a failure to issue executions in certain cases. As heretofore held, we are not satisfied beyond a reasonable doubt that these acts and omissions were actuated by corrupt motives, or that the dereliction in this respect amounted to such willful neglect of official duty as is contemplated by the Constitution as grounds for impeachment and removal from office.—*Nelson v. State,* 182 Ala. 449, 62 South. 189.

The evidence in this case does not show a course of conduct by this respondent, in the discharge of his duty

as judge and clerk of the county court, as would commend him to us as a faithful, accurate, and painstaking official. His administration as respecting the county court has been lax, inaccurate, and indifferent, and in some instances contrary to law. It may be true that he can escape censure in some instances, owing to the conduct of the acting solicitor, and on whom he had a right to rely to a certain extent; but there are other instances of dereliction which are traceable to the door of the respondent alone. The proof, however, does not show such a state of physical or mental disability on the part of this respondent as to render him "incompetent," as the term is used in our Constitution, and as construed by our court in the unpublished case of *Lowe v. State,* and which is quoted from at length by McClellan, J., in *State v. Martin,* 180 Ala. 458, 61 South. 491.

We therefore find and conclude that the respondent is not guilty as charged in the information, and judgment will be accordingly entered.